## CIVIL RIGHTS AND DISCRIMINATION

### HOUSING — APPLICABILITY OF FAIR HOUSING AMENDMENT ACT TO FIRE SAFETY CODE REQUIREMENTS

June 25, 1993

*Chief Elwood H. Banister*
*Baltimore County Fire Department*

You have requested our opinion whether the federal Fair Housing Amendments Act of 1988 allows you to apply Chapter 21, "Residential Board and Care Occupancies," of the 1988 Edition of the National Fire Protection Association ("NFPA") Life Safety Code to a small private group home housing four to eight mentally ill residents.

For the reasons stated below, we conclude that a provision of the NFPA Life Safety Code that is inapplicable to a single family dwelling may not be applied to a small private group home for the mentally ill unless the provision is necessary to protect the safety of the residents of the home, taking into account their specific needs and abilities. If, despite their disabilities, the residents of the group home are as capable of reacting to a fire emergency as residents in a single family dwelling would be, special safety code provisions may not be applied.[1]

---

[1] We note that the issue addressed in this opinion is the subject of a complaint filed with the U.S. Department of Housing and Community Development by ReVisions, Inc., a provider of group housing, against Baltimore County and the County Fire Department. Although our policy generally precludes our issuing an opinion on a matter that is the subject of current or imminent litigation, in this instance both parties seek the opinion, which they view as an alternative to litigation.

In light of our conclusion about the Fair Housing Amendment Act, we need not consider the effect, if any, of the Americans with Disabilities Act on the issue.

# I

## Background

Under the Mental Hygiene Law, the Department of Health and Mental Hygiene regulates the establishment, licensing, and operation of private group homes. §10-516 of the Health-General Article, Maryland Code ("HG" Article). A "small private group home" is defined as a residence in which at least four but not more than eight individuals "who have been or are under treatment for a mental disorder may be provided care or treatment in a homelike environment." HG §10-514(d)(1) and (e). For zoning purposes, a small private group home "is deemed conclusively a single-family dwelling" and "may not be subject to any special exception, conditional use permit, or procedure that differs from that required for a single-family dwelling or multi-family dwelling of similar density in the same zone." HG §10-518(b)(1)(i) and (3).[2]

In your letter, you indicated that ReVisions, Inc., a licensed provider of care to the mentally disabled, has procured the construction of two individual homes by an area home builder. You stated that the residents of the homes have a "prompt evacuation capability," and there will be a competent monitor on duty at all times. The four to eight persons living together will share household chores, cooking, and caring for their own personal needs. The residents will be placed in the homes only after careful screening by a multi-disciplinary board.

After the homes were completed, an inspection revealed violations of certain provisions of Chapter 21 of the NFPA Life Safety Code, which applies to "board and care occupancies": §§21-2.3.4.2, requiring proper installation of approved smoke detectors; 21-2.3.4.1, requiring proper installation of a manual fire alarm system; and 21-2.3.1.1, requiring protection for vertical openings so

---

[2] Under the Developmental Disabilities Law, DHMH similarly licenses and regulates private group homes. *See* HG Title 7, Subtitle 9. These homes are also "deemed conclusively [to be] single family dwelling[s]." HG §7-603(b)(1)(i).

that primary exit routes are protected by fire rated enclosures.[3] Different and less extensive safety requirements apply to one and two family dwellings. *See* NFPA Life Safety Code Chapter 22.

## II

### The Fair Housing Amendments Act

In general, the federal Fair Housing Amendments Act ("FHAA") makes it unlawful to discriminate in the sale of a dwelling to any person on the basis of handicap.[4] Furthermore, reasonable accommodations in rules must be made in order to afford handicapped persons an equal opportunity to use and enjoy a dwelling. Specifically, 42 U.S.C. §3604(f) makes it unlawful for any individual or government:

> To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of —
>
> . . .
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available....

The FHAA goes on to state that "discrimination includes ... a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling ...." 42 U.S.C. §3604(f)(3). Finally, "any law of a State, a political

---

[3] According to a letter dated November 4, 1992 from William O. Jensen, Jr., Baltimore County Office of Law, the only requirement still at issue is the final one involving the protection of vertical openings.

[4] ReVisions, Inc. and the County appear to be in agreement that the persons to be placed in the two homes meet the definition of "handicapped." *See* 42 U.S.C. §3602(h).

subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this title shall to that extent be invalid." 42 U.S.C. §3615.

The legislative history of the FHAA indicates both a recognition of a state's responsibility to protect safety and also health and an intent to prohibit "the application or enforcement of otherwise neutral rules and regulations on health [and] safety ... in a manner which discriminates against people with disabilities." H.R. Rep. No. 100-711, 100th Cong., 2d Sess. 24 (1988), *reprinted in* 1988 U.S. Code Cong. & Admin. News 2173, 2185. The House Committee pointedly stated that "[g]eneralized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion." *Id*. at 2179. Intent to discriminate is immaterial: "Acts that have the effect of causing discrimination can be just as devastating as intentional discrimination." *Id.* at 2186.

In two published opinions, we have reviewed the relationship between State laws and the provisions of the FHAA. In 74 *Opinions of the Attorney General* 164 (1989), we concluded that certain State law requirements regarding the location of homes for individuals with disabilities were unenforceable because they contravened the FHAA. In 75 *Opinions of the Attorney General* 291 (1990), we concluded that the consideration of "community acceptance" as a decisional factor in determining licensure applications was violative of the FHAA. Both of these opinions reflect our view that the FHAA no longer allows governmental barriers to the right of people with disabilities to live where they choose. This opinion applies this precept to the safety regulations at issue.


### III


### Application of FHAA to Fire Safety Requirements

An analysis of alleged discrimination under the FHAA resulting from disparate impact entails a comparison between the protected class and others similarly situated. In *Stewart B. McKinney Foundation, Inc. v. Town Plan and Zoning Comm'n*, 790 F. Supp. 1197 (D. Conn. 1992), for example, the "disparate impact" of certain zoning procedures on seven HIV-infected persons who

sought to live together was measured by comparing the procedures applicable to seven unrelated, non-HIV-infected people planning to live together in the particular section of the town. 790 F. Supp. at 1218-19.

In the case of the NFPA Life Safety Code provisions at issue here, we conclude that, as a matter of law, the proper comparison is to fire safety requirements in a single family dwelling. We start with the General Assembly's judgment, albeit in the context of zoning, that a small private group home "is deemed conclusively a single family dwelling." HG §10-518(b). Indeed, a small private group home has all of the characteristics of a single family dwelling under the county's own zoning regulations, but for the fact that the owner or tenant of the group home is compensated for providing room, board, and care to the residents. This compensation makes the group home a "boarding house" under the zoning regulations and the Life Safety Code.

But it is precisely the disability of the group home's residents that requires compensated care to be provided. In other words, the owner of the group home is paid to provide care that is needed because the residents are mentally disabled. The FHAA does not allow this fact alone, linked as it is to disability, to justify a more stringent regulatory regime.

In *Marbrunak, Inc. v. City of Stow, Ohio*, 974 F.2d 43 (6th Cir. 1992), the city sought to require a group home for four mentally retarded women to obtain a special permit as a boarding house, rather than be allowed without permit as a single family dwelling. The trial court held that, as a matter of Ohio law, the intended use indeed qualified as a single family dwelling, and no special permit could be required. 974 F.2d at 45-46. The city's attempt to impose the special permit requirement amounted to discrimination under the FHAA.[5]

Likewise, in our view, the FHAA does not allow a small private group home, given its salient characteristics under Maryland

---

[5] This aspect of the trial court's decision was not appealed.

law, to be viewed as anything other than a single family dwelling for purposes of fire safety requirements.  Thus, if a single family dwelling is subject to a safety code requirement (smoke detectors, for example), a small private group home may be made subject to the same requirement, for such a universal requirement is not discriminatory.  But a requirement entailing more than insignificant costs that is applicable to a small private group home, but not to a single family residence, raises serious FHAA issues.

Such a differential requirement can be justified only in terms of the individual needs and attributes of the residents of the home. In *Marbrunak*, the city informed the provider of the group home that it would have to satisfy a series of extensive safety requirements, including sprinklers, an interconnected alarm system, lighted exit signs, push bars on all doors, and a fire extinguisher every 30 feet. The city admitted that these requirements were far more extensive than those required of single family dwellings.  The federal appeals court agreed with the lower court's conclusion that the fire safety requirements were "based on generalized perceptions about the inability of developmentally disabled persons to live safely in a 'normal home.'"  974 F.2d at 47.  The lower court indicated that Marbrunak was required "'to install an alarm system, doors with push bars, and fire walls and flame retardant wall coverings without showing why such renovations were needed to ensure the safety of the residents.  In sum, the requirements have little or no correlation to the actual abilities of the citizens upon whom they are imposed.'" *Id*.

The Sixth Circuit agreed that the fire safety requirements violated the FHAA because the ordinance made "no attempt at individualizing its requirements to the needs or abilities of particular kinds of developmental disabilities":

> The safety measures include nearly every safety requirement that one might think of as desirable to protect persons handicapped by any disability — mental or physical; and all the requirements apply to all housing for developmentally disabled persons, regardless of the type of mental condition that causes

their disabilities or of the ways in which the
disabilities manifest themselves.

*Id*.  The Sixth Circuit went on to say that the FHAA did *not* prohibit
the city from imposing special safety standards for the protection of
developmentally disabled persons, so long as any standards that are
different from those applicable to the general population are
warranted by "the unique and specific needs and abilities" of the
persons with disabilities.

The Sixth Circuit's reasoning is sound, in our view, and applies
to the admittedly far less onerous requirements that Baltimore
County proposes in this case.  Safety code requirements like those at
issue here increase the cost of a house to be used as a small private
group home.  If the incremental costs are more than *de minimis*, they
might contribute to a licensed provider's judgment that a project is
not feasible.  Similarly, since State resources to pay for care in small
private group homes are limited, the incremental cost of special
safety requirements could ultimately result in the State's serving
fewer individuals with disabilities.  In the long run, then, special
safety requirements could limit the availability of housing for the
mentally ill.

As we understand the facts, the residents of ReVisions's group
homes have no "unique and specific needs and abilities" with regard
to fire safety; ReVision and fire department officials agree that the
residents' ability to evacuate the building is comparable to that of
residents of the typical single family dwelling.[6]  Under these
circumstances, the requirements of Chapter 21 of the NFPA Life
Safety Code may not be enforced.  As United States District Court
for the District of Maryland recently wrote of a group home safety
regulation in Montgomery County, a safety code requirement is
unlawful as applied to people with disabilities if it "has no necessary
correlation to the actual abilities of the persons upon whom it is
imposed, and it therefore unreasonably limits their opportunities to

---

[6] DHMH should consider whether, as a policy matter, its licensing
procedures should include a process for determining of the evacuation
capabilities of the residents of private group homes.

live in a community of their choice." *Potomac Group Home Corp. v. Montgomery County*, 823 F. Supp. 1285, 1300 (1993).[7]

## IV

## Conclusion

In summary, it is our opinion that the federal Fair Housing Amendments Act prohibits enforcement of fire safety code requirements in a small private group home for the mentally ill if the requirements are neither imposed on single family dwellings nor tailored to the unique and specific needs and abilities of the home's residents.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*

---

[7] The Montgomery County regulation at issue excluded from group homes those who were unable to exit from the home on their own.